UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JAMES PYUNG LEE and<br>HEE SOOK NAM, | § | |
| | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:19-CV-0898-B |
| | § | |
| VERIMATRIX, INC., ROBIN "ROSS"<br>COOPER, and INSIDE SECURE, | § | |
| | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Robin "Ross" Cooper's motion to dismiss or transfer filed May 21, 2019 (Doc. 15). For the reasons that follow, the Court hereby **DENIES IN PART** and **GRANTS IN PART** Defendant Cooper's motion. Although the Court concludes that it lacks personal jurisdiction over all Defendants in this case, the Court **DENIES** Defendant Cooper's motion to dismiss (Doc. 15) for lack of personal jurisdiction. Rather than dismissing the case, the Court **GRANTS** Defendant Cooper's motion to transfer venue (Doc. 15) to the Southern District of California, but the Court elects to transfer the case pursuant to 28 U.S.C. § 1406(a), rather than 28 U.S.C. § 1404(a). Further, because the Court exercises its discretion to transfer the case, the Court hereby **DENIES** Defendant Verimatrix, Inc.'s motion to dismiss (Doc. 18) as **MOOT**.

### I.

### BACKGROUND

This is a declaratory-judgment action arising out of a stock-ownership dispute. Plaintiffs James Pyung Lee and Hee Sook Nam allege that Defendant Cooper, the former Chief Executive

Officer of Defendant Verimatrix, Inc., agreed with Plaintiffs to transfer stock shares to Plaintiffs. Doc. 9, Pls.' First Am. Compl., ¶¶ 14–15. According to Plaintiffs, they each provided consideration to receive 220,000 shares in Defendant Verimatrix. *Id.* ¶¶ 17–18. On or about March 12, 2003, Plaintiffs allege, Defendant Cooper transferred 220,000 stock shares to each Plaintiff. *Id.* Thereafter, a Director of Defendant Verimatrix delivered the endorsed shares to Plaintiffs in Dallas County, Texas. *Id.* ¶ 15.

In December 2018, Plaintiffs discovered that Defendant Inside Secure was seeking to acquire shares of Defendant Verimatrix. Doc. 28, App. Supp. Pls.' Combined Resp., Exs. 1–2, ¶ 6. Now, Plaintiffs contend, Defendant Inside Secure's acquisition of Defendant Verimatrix is purportedly complete, but neither Plaintiff has sold his or her shares. *Id.* ¶ 7.[1] Confusingly, Plaintiffs omit any facts indicating whether they were consulted regarding this acquisition or whether Defendants have denied Plaintiffs' ownership in the stock altogether. *See* Doc. 9, Pls.' First Am. Compl.; Doc. 27, Pls.' Combined Resp. It appears that the alleged acquisition is an attempt to divest Plaintiffs of their claimed interest in the stock. In any event, this characterization of the allegations does not affect the Court's analysis.

Plaintiffs filed this declaratory-judgment action in Texas state court on January 9, 2019. Doc. 1-3, Pls.' Orig. Pet., 1. They seek a declaratory judgment stating that: (1) Plaintiffs are owners of Defendant Verimatrix; (2) Plaintiffs own the stock certificates attached to their amended complaint (Doc. 9); and (3) Defendant Cooper had the legal authority to transfer the stock to Plaintiffs. Doc. 9, Pls.' First Am. Compl., ¶ 20. Based on diversity jurisdiction, Defendant Cooper timely filed a

---

[1] This contention of a completed acquisition does not appear in Plaintiffs' amended complaint. *See* Doc. 9, Pls' First Am. Compl. Nonetheless, the Court includes it for background purposes.

notice of removal (Doc. 1). Subsequently, Plaintiffs filed an amended complaint (Doc. 9). Next, Defendant Cooper filed a motion to dismiss or transfer (Doc. 15); Plaintiffs responded (Doc. 27); and Defendant Cooper replied (Doc. 29). Accordingly, Defendant Cooper's motion to dismiss or transfer is now ripe for review.

In his motion to dismiss, Defendant Cooper seeks dismissal for: (1) lack of personal jurisdiction; (2) improper venue; (3) failure to join a necessary party; and (4) failure to state a claim due to the expiration of the statute of limitations. Doc. 16, Br. Supp. Def.'s Mot., 3. As an alternative to dismissal, Defendant Cooper also contends that transfer of the case is proper under 28 U.S.C. § 1404. *Id.*[2]

## II.

## LEGAL STANDARD

A.      *Dismissal Under Federal Rule of Civil Procedure 12(b)(2) for Lack of Personal Jurisdiction*

Federal Rule of Civil Procedure 12(b)(2) allows for dismissal of an action when a court lacks personal jurisdiction over the defendant. A plaintiff bears the burden of establishing a trial court's personal jurisdiction over each defendant. *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). "To satisfy that burden, the [plaintiff] must 'present sufficient facts as to make out only a prima facie case supporting jurisdiction,' if a court rules on a motion [to dismiss] without an evidentiary hearing." *Lahman v. Nationwide Provider Sols.*, 2018 WL 3035916, at *4 (E.D. Tex. June 19, 2018)

---

[2] As set out below, the Court concludes that it does not have personal jurisdiction over any of the three Defendants in this case. Thus, the Court need not address Defendant Cooper's other arguments for dismissal. Additionally, as an alternative to dismissal, Defendant Cooper contends that transfer of the case is proper under 28 U.S.C. § 1404. *Id.* But because the Court finds that it lacks personal jurisdiction over all Defendants, it assesses transfer of the case pursuant to 28 U.S.C. § 1406(a) instead.

(quoting *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000)).

"When considering the motion to dismiss, 'allegations in a plaintiff's complaint are taken as true except to the extent that they are contradicted by defendant's affidavits.'" *Lahman*, 2018 WL 3035916, at *4 (alterations incorporated) (quoting *Int'l Truck & Engine Corp. v. Quintana*, 259 F. Supp. 2d 553, 557 (N.D. Tex. 2003) (citing *Wyatt v. Kaplan*, 686 F.2d 276, 282–83 n.13 (5th Cir. 1982))). Further, "[a]ny genuine, material conflicts between the facts established by the parties' affidavits and other evidence are resolved in favor of [the] plaintiff for the purposes of determining whether a *prima facie* case exists." *Valdez v. Kreso, Inc.*, 157 F. Supp. 2d 722, 725 (N.D. Tex. 2001) (citing *Jones v. Petty-Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1067 (5th Cir. 1992) and *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990)).

A federal court sitting in diversity may exercise personal jurisdiction over a nonresident defendant to the same extent as a forum-state court. *Wilson v. Belin*, 20 F.3d 644, 646 (5th Cir. 1994). A Texas state court can exercise jurisdiction over a nonresident if two preconditions are met: (1) the nonresident must be amenable to service of process under Texas's long-arm statute; and (2) the assertion of jurisdiction over the nonresident must comport with the due process clause of the Fourteenth Amendment. *Jones*, 954 F.2d at 1067. Because Texas's long-arm statute has been held to extend to the limits of due process, the Court need only determine whether jurisdiction over the defendants is constitutionally permissible. *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex. 1990).

To meet the federal constitutional test of due process, two elements must be satisfied: (1) the defendant must have purposefully availed itself of the benefits and protections of the forum state by establishing "minimum contacts" with that state such that it should reasonably anticipate being haled into court there; and (2) the exercise of jurisdiction over the defendant must not offend traditional

notions of fair play and substantial justice. *Jones*, 954 F.2d at 1068.

The "minimum contacts" prong of the due process analysis can be met through contacts giving rise to either specific or general personal jurisdiction. *Gundle Lining Constr. Corp. v. Adams Cty. Asphalt, Inc.*, 85 F.3d 201, 205 (5th Cir. 1996). "General personal jurisdiction is found when the nonresident defendant's contacts with the forum state, even if unrelated to the cause of action, are continuous, systematic, and substantial." *Marathon Oil Co. v. A.G. Ruhrgas*, 182 F.3d 291, 295 (5th Cir. 1999). In contrast, specific personal jurisdiction is established through the defendant's contacts with the forum state that arise from, or are related to, the cause of action. *Gundle Lining*, 85 F.3d at 205. The specific-jurisdiction inquiry "focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 283–84 (2014) (internal citations and quotation marks omitted).

To find specific jurisdiction over a defendant, a court must find that "the defendant's suit-related conduct . . . create[s] a substantial connection with the forum [s]tate." *Id.* at 284. This connection "must arise out of contacts that the defendant *himself* creates with the forum [s]tate," and it must be based on "the defendant's contacts with the forum [s]tate itself, not the defendant's contacts with persons who reside there." *Id.* at 284–85 (emphasis in original) (internal citations and quotation marks omitted). Thus, a defendant cannot be "haled into court" based on the "'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the [s]tate." *Id.* at 286 (internal quotation marks omitted) (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985)). And a defendant's physical entry into the forum state, whether in person or through an agent, is "a relevant contact" in assessing personal jurisdiction, but it is not a prerequisite to jurisdiction. *Walden*, 571 U.S. at 285.

# III.

# ANALYSIS

A.   *Personal Jurisdiction*

The Court now turns to whether it has personal jurisdiction over Defendants Cooper, Verimatrix, and Inside Secure. Plaintiffs do not explicitly indicate whether they contend that Defendants are subject to general or specific jurisdiction—or both. *See* Doc. 9, Pls.' First Am. Compl., ¶¶ 6–11; Doc. 27, Pls.' Combined Resp., 2–4. But because their arguments focus exclusively on Defendants' contacts with Texas that relate to the cause of action, Plaintiffs' arguments sound only in specific jurisdiction. *See Gundle Lining*, 85 F.3d at 205.

For example, in their amended complaint, Plaintiffs allege that Defendants Cooper and Verimatrix have "minimum contacts with the state of Texas via their entry to Texas and targeting of Texas residents to conduct a [sale] of . . . stock and transfer of stock certificate[s]." Doc. 9, Pls.' First Am. Compl., ¶ 10. And in their response, Plaintiffs contend that "Defendants clearly knew that Plaintiffs were Texas residents, they aimed their activities at Texas, and the[y] knew that the brunt of those activities would be felt in Texas." Doc. 27, Pls.' Combined Resp., 4. Further, Plaintiffs' only argument supporting personal jurisdiction over Defendant Inside Secure rests on the notion that, because Defendant Verimatrix is "allegedly a subsidiary of Inside Secure," and there is personal jurisdiction over Defendant Verimatrix, the Court has personal jurisdiction over Defendant Inside Secure. *Id.* at 7.

Given Plaintiffs' failure to allege general jurisdiction over any defendant in the case, this Court focuses its analysis exclusively on whether it has specific jurisdiction over each Defendant. Moreover, because Plaintiffs rely on the same arguments to support a finding of personal jurisdiction

for both Defendant Cooper and Defendant Verimatrix, the Court addresses personal jurisdiction over these Defendants together.

1.      Defendants Cooper and Verimatrix

The Court first examines whether it has specific jurisdiction over Defendants Cooper and Verimatrix. Plaintiffs contend that Defendants Cooper and Verimatrix "have minimum contacts with the state of Texas" by virtue of "their entry to Texas and targeting of Texas residents to conduct a [sale] of a stock and transfer of stock certificate[s]." Doc. 9, Pls.' First Am. Compl., ¶ 10.

Specifically, Plaintiffs state that Defendant Cooper "solicited Texas residents, the Plaintiffs, to sell them stock in Defendant Verimatrix." *Id.* ¶ 8. Thereafter, Plaintiffs contend, they paid Defendant Cooper, and Defendant Cooper had the stock certificates hand-delivered to Plaintiffs in Dallas County, Texas, by a Director of Verimatrix. *Id.* ¶¶ 8, 15. During this transaction, which took place on or about March 12, 2003, Plaintiffs indicate that Defendant Cooper was "the acting, apparent, and actual [Chief Executive Officer] of Defendant Verimatrix." *Id.* ¶ 9. And now, Plaintiffs explain, Defendant Inside Secure has entered an agreement to acquire Defendant Verimatrix. Doc. 27, Pls.' Combined Resp., 2.[3]

Since Defendants Cooper and Verimatrix "directed their conduct at Texas residents and sent an agent to travel to Texas to complete execution of the agreement," Plaintiffs allege, they have purposefully availed themselves to the benefits and protections of Texas. *Id.* ¶ 10; *see Jones*, 954 F.2d at 1068.

---

[3] Plaintiffs' amended complaint states that Defendant Inside Secure "is attempting a stock buyout of Defendant Verimatrix," not that these Defendants entered an agreement. Doc. 9, Pls.' First Am. Compl., ¶ 11. But to provide context, the Court includes Plaintiffs' mention of a completed agreement.

But Defendant Cooper contends that contracting with residents of a forum state does not suffice as a basis for specific personal jurisdiction. *See* Doc. 16, Br. Supp. Def.'s Mot., 6. Defendant Cooper points to Fifth Circuit cases where courts found no specific jurisdiction over a nonresident defendant, despite the nonresident defendant's repeated communications with plaintiffs in Texas. *See id.* (citing *Southmark Corp. v. Life Inv'rs*, 851 F.2d 763 (5th Cir. 1988); *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773 (5th Cir. 1986); *Stuart*, 772 F.2d 1185). Further, Defendant Cooper contends that *Southmark Corporation* is particularly analogous to the case at hand. Doc. 16, Br. Supp. Def.'s Mot., 6–7.

In *Southmark Corporation*, the plaintiff and the defendant, Life, allegedly contracted for the sale of stock shares. 851 F.2d at 765. Nonetheless, after this alleged contract formed, Life signed a written agreement to sell the same shares to another defendant—USLICO. *Id.* Thereafter, the plaintiff sued Life for breach of contract and USLICO for tortious interference with the alleged contract. *Id.* The plaintiff argued that "the district court had specific jurisdiction over USLICO because there [was] *prima facie* evidence that USLICO committed an intentional tort against [the plaintiff] in Texas with knowledge that [the plaintiff] is a Texas resident." *Id.* at 772. Rejecting this argument, the district court found USLICO's contacts insufficient to establish personal jurisdiction with the forum state, and the Fifth Circuit agreed. *Id.* at 766, 773.

The Fifth Circuit, in *Southmark Corporation*, reasoned that "the oral agreement with which USLICO allegedly interfered was apparently negotiated and made in Atlanta and/or New York, and there is no evidence that the agreement was made or to be performed in Texas or governed by Texas law." *Id.* at 772. Moreover, the stock at issue belonged to a company that was not a Texas corporation and that did not conduct business in Texas. *Id.* at 773. Additionally, the stock was not

located or purchased in Texas—the plaintiff was incorporated in Georgia, while USLICO was a Virginia company domiciled in Washington, D.C. *Id.* Based on these facts, the court concluded that "nothing in the record indicates that USLICO expressly aimed its allegedly tortious activities at Texas, or that Texas [was] even the focal point of USLICO's tortious conduct." *Id.* Even if USLICO knew that the plaintiff's principal place of business was in Texas, this alone would not "cause USLICO to anticipate being haled into a Texas court to answer for its conduct." *Id.* Rather, the plaintiff's residence in Texas was "a mere fortuity." *Id.*

Likewise, Defendant Cooper alleges that here, Plaintiffs "fortuitously happened to reside in Texas." Doc. 16, Br. Supp. Def.'s Mot., 8. And Plaintiffs' only basis for jurisdiction, according to Defendant Cooper, is Defendant Cooper's agent's "execution of contracts with Plaintiffs." *Id.* In an affidavit, Defendant Cooper states that he has never conducted business on behalf of Defendant Verimatrix in Texas, nor did he meet with Plaintiffs in Texas; rather, he claims, he met with Plaintiffs in South Korea. Doc. 17, App. Supp. Def.'s Mot., ¶¶ 9–11. Thus, Defendant Cooper asserts that "none of [his] conduct was aimed at Texas in particular." Doc. 16, Br. Supp. Def.'s Mot., 8. Additionally, Defendant Cooper points out that "Plaintiffs' allegations that [Defendant] Verimatrix is subject to personal jurisdiction rest on the same facts alleged as to jurisdiction over [Defendant] Cooper." *Id.* at 11.

In response, Plaintiffs seek to distinguish *Southmark Corporation* based on the ground that, unlike in *Southmark Corporation*, the forum state here is "not merely the state where Plaintiffs reside . . . ." Doc. 27, Pls.' Combined Resp., 4. Instead, according to Plaintiffs, Texas is the state where Defendant Cooper solicited Plaintiffs and sent a Director of Verimatrix to hand-deliver the stock certificates. *Id.* Accordingly, Plaintiffs conclude that "Defendants clearly knew that Plaintiffs were

Texas residents, they aimed their activities at Texas, and the[y] knew that the brunt of those activities would be felt in Texas." *Id.*

To further support their argument, Plaintiffs point to *Republic Business Credit, LLC v. Greystone & Co.*, where the Eastern District of Louisiana found that the plaintiff established "a prima facie case that defendants expressly aimed their conduct at [the forum state.]" *See* Doc. 27, Pls.' Combined Resp., 3 (citing 2014 WL 122102, at *5 (E.D. La. Jan. 10, 2014)). In *Republic Business*, the plaintiff entered an agreement with the defendants to purchase a Wells Fargo Lockbox Account comprised of the invoices or accounts receivable of other companies. *See* 2014 WL 122102, at *1. After the plaintiff acquired the Account, the defendants claimed ownership of certain funds in the Account and, upon the plaintiff's opposition to this claim, directed Wells Fargo to close the Account. *Id.* As a result, the plaintiff brought claims of conversion, intentional interference with contract, and tortious interference with a business relationship. *Id.*

In analyzing specific personal jurisdiction over the defendants, the district court in *Republic Business* found it clear that the defendants "knew or should have known that the brunt of the injury to [the] plaintiff would be felt in the forum state," given that the plaintiff–business had its financial operations "centered" in the forum state. *Id.* at *4. Next, the court examined whether the defendant "expressly aimed [its] tortious conduct at not only [the plaintiff] but the forum state as well." *Id.* Since the plaintiff brought claims of intentional interference with a business relationship, the court applied the "forum-nexus test" to all claims, examining "whether the alleged tortfeasor expressly aimed his out-of-state conduct at the forum state by examining the nexus between the forum and the injured . . . relationship." *Id.* (internal quotation marks omitted) (quoting *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 402 (5th Cir. 2009)).

First, the *Republic Business* court noted that Louisiana—the forum state—was the location of the plaintiff's only business office, as well as the location of the Wells Fargo branch where the plaintiff's accounts were located. *Id.* at *5. And the court inferred the defendants' knowledge of these facts based on the defendants' participation in negotiations with the plaintiff for the Account purchase. *Id.* Further, the court pointed out that Louisiana was where the plaintiff would conduct all of its business—the business allegedly undermined by the defendants—with customers of the Account. *Id.* Additionally, one account receivable that the plaintiff acquired through the purchase of the Account belonged to a Louisiana company with its place of business in Louisiana. *Id.* Thus, the defendants allegedly damaged the plaintiff's relationship with a Louisiana entity. *Id.* Based on these circumstances, the court found that it had personal jurisdiction over the defendants. *Id.* at *6.

Here, Plaintiffs reiterate that, like the defendants in *Republic Business*, Defendants "aimed their activities at [the forum state]" and "knew that the brunt of those activities would be felt in [the forum state.]" Doc. 27, Pls.' Combined Resp., 4.

Defendant Cooper, however, seeks to distinguish *Republic Business*, arguing that here, Plaintiffs cannot demonstrate that Defendants expressly aimed their conduct at the forum state. Doc. 29, Reply Supp. Def.'s Mot., 4. In *Republic Business*, Defendant Cooper contends, there were numerous factors warranting the court's finding of "a sufficient nexus . . . ." *Id.* at 3–4. Here, on the other hand, Defendant Cooper states that no such factors exist; rather, "Plaintiffs' allegations are limited to asserting that (i) Plaintiffs lived in Texas . . . and (ii) Defendant Cooper directed a Director to travel to Texas and solemnize the contract . . . ." *Id.* at 4. Given that contracting with a forum state's resident is insufficient to create personal jurisdiction, Defendant Cooper argues,

Plaintiffs have failed to satisfy their burden of demonstrating personal jurisdiction. *Id.* (citing *Freudensprung v. Offshore Tech. Servs.*, 379 F.3d 327, 344 (5th Cir. 2004)).

The Court agrees with Defendant Cooper's conclusion. But as a preliminary matter, the Court does not find *Southmark Corporation* or *Republic Business* particularly analogous to the case at hand. In *Southmark Corporation*, the Fifth Circuit analyzed whether there was personal jurisdiction over a defendant that allegedly interfered with the plaintiff's contract for the purchase of stock—a contract between the plaintiff and *another* defendant. 851 F.2d at 765. Similarly, in *Republic Business*, the court examined personal jurisdiction based on the defendants' alleged interference with the business relationships between plaintiffs and third parties. *See* 2014 WL 122102, at *4–5.

Conversely, with respect to Defendants Cooper and Verimatrix, the Court is not analyzing personal jurisdiction based on their alleged interference with Plaintiffs' contract. Rather, Plaintiffs seek a declaratory judgment stating that they are owners of Defendant Verimatrix and that Defendant Cooper had legal authority to transfer stock certificates to Plaintiffs. Doc. 9, Pls.' First Am. Compl., ¶ 20. Thus, Plaintiffs do not allege that Defendants Cooper and Verimatrix interfered with their contracts; instead, they seek an interpretation of these alleged contracts. Further, the claim against Defendants Cooper and Verimatrix underlying the declaratory-judgment action resembles, at most, a breach-of-contract claim—not a claim of intentional interference.[4] Accordingly,

---

[4] Plaintiffs' allegations suggest the assertion of a breach-of-contract claim against Defendants Cooper and Verimatrix. For example, Plaintiffs state that Defendant Cooper transferred shares of Defendant Verimatrix to Plaintiffs "for good and valuable consideration." *Id.* ¶¶ 17–18. Additionally, Plaintiffs refer to the transfer of stock as an "oral agreement . . . ." *Id.* ¶ 19. Moreover, Plaintiffs attempt to invoke the Texas long-arm statute that "permits jurisdiction over nonresidents conducting part of a contract in the state of Texas . . . ." Doc. 27, Pls.' Combined Resp., 2 (referring to TEX. CIV. PRAC. & REM. CODE ANN. § 17.042 (West 2017)). Finally, Plaintiffs state that a Director of Verimatrix traveled to Texas to "solemnize the contract . . . ." *Id.*

the Court finds that the parties' focus on these cases is misplaced and thus turns to the applicable legal principles.

Ultimately, "whether the minimum contacts are sufficient to justify subjection of [a] non-resident to suit in the forum is determined not on a mechanical and quantitative test, but rather under the particular facts upon the quality and nature of the activity with relation to the forum state." *Miss. Interstate Express, Inc. v. Transp., Inc.*, 681 F.2d 1003, 1006 (5th Cir. 2003). Nevertheless, "the facts of other cases" may provide "guiding principles." *Sw. Offset, Inc. v. Hudco Publ'g Co.*, 622 F.2d 149, 151 (5th Cir. 1980).

For example, in *Central Freight Lines Inc. v. APA Transport Corporation*, the Fifth Circuit found specific jurisdiction where, despite the defendant's "relatively brief *physical* presence in the state," the defendant "purposefully directed its in-state and out-of-state activities at a resident of the forum . . . with the aim of establishing a long-term association with that resident and with the foreseeable and intended result of causing economic activity within the forum state." 322 F.3d 376, 383 (5th Cir. 2003). Specifically, the defendant and plaintiff, two freight-delivery companies, entered an agreement to use one another's services for deliveries in the other company's region of operation. *Id.* at 379. Subsequently, the defendant allegedly breached the agreement, leading the plaintiff to bring a breach-of-contract claim. *Id.* In reviewing the district court's dismissal for lack of personal jurisdiction, the Fifth Circuit found that the defendant had contacts with the forum state "sufficient to support specific jurisdiction." *Id.* at 381.

Namely, the court in *Central Freight Lines* noted that the defendant sent two representatives to the forum state, leading to the negotiation and entering of the agreement between the parties. *Id.* at 382. The court noted that, regardless of where the parties negotiated, the defendant "specifically

and deliberately 'reached out' to a . . . corporation [of the forum-state] with the deliberate aim of entering into a long-standing contractual relationship . . . ." *Id.* Additionally, the court reasoned, the defendant "knew that it was affiliating itself with an enterprise based primarily in [the forum state]" by entering the agreement. *Id.* Finally, the court assumed that the defendant knew that many of the plaintiff's customers utilizing the defendant's services would come from the forum state. *Id.* Based on these facts, the court concluded that the defendant "should have reasonably anticipated being haled into court in [the forum state] on breach of contract claims . . . ." *Id.* at 383.

In contrast, in *Stuart v. Spademan*, the Fifth Circuit did not find personal jurisdiction over a defendant where "the agreement entered into by [the parties] did not contemplate a long-term relationship with . . . continuing obligations and wide-reaching contacts . . . ." 772 F.2d at 1194. The court specifically noted several forum-state contacts made by the defendant: the defendant shipped goods to the plaintiffs upon the plaintiffs' request; the parties exchanged communications in developing a contract; and the defendant mailed payment checks to the forum state. *Id.* at 1193–94. These contacts, however, were insufficient to establish the "minimum contacts necessary to constitutionally exercise jurisdiction over [the defendant.]" *Id.* at 1194.

Likewise, in *Renoir v. Hantman's Associates, Inc.*, the Fifth Circuit did not find personal jurisdiction where the defendants did not "purposefully avail[] themselves of the benefits and protections of doing business in Texas . . . ." 230 F. App'x 357, 360 (5th Cir. 2007) (per curiam). In *Renoir*, the defendants negotiated and contracted with residents of the forum state, and one defendant visited the forum state to address a discrepancy between the parties' contract and the plaintiffs' subsequent performance. *Id.* at 358–59. Examining personal jurisdiction, the court first pointed out that "[a]n exchange of communications in the course of developing and carrying out a

contract . . . does not, by itself, constitute . . . purposeful availment." *Id.* at 360. Next, the court

addressed one defendant's single visit to the forum state, indicating that the visit "only took place

because of discrepancies . . . . The visit was no more than a fortuity." *Id.* Thus, the plaintiffs failed

to establish that defendants had minimum contacts with the forum state. *Id.*

Further, the Fifth Circuit declined to find personal jurisdiction in *Moncrief Oil International*

*v. OAO Gazprom*, even though the defendant sent an executive to the forum state to negotiate an

agreement—not to address an unforeseen discrepancy in the agreement. 481 F.3d 309, 313 (5th Cir.

2007). In so holding, the court relied upon *Hydrokinetics, Inc. v. Alaska Mechanical, Inc.*, 700 F.2d

1026 (5th Cir. 1983), reasoning:

> In *Hydrokinetics*, we found that the defendant's two physical visits to Texas did not
> create jurisdiction, in part because the defendant did not regularly do business in
> Texas, and because most of the negotiations appeared elsewhere. The same is true
> here, and [the executive's] visit did not create jurisdiction.

*Moncrief Oil*, 481 F.3d at 313 (internal citation omitted).

Similarly, here, the Court finds the Defendants' agent's visit[5] to Texas to deliver the stock

certificates insufficient to confer personal jurisdiction. Plaintiffs rely primarily upon this visit to

establish personal jurisdiction over Defendants Cooper and Verimatrix. Specifically, Plaintiffs allege

that Defendant Cooper directed an agent—a member of Defendant Verimatrix's board of

---

[5] Because Defendant Cooper does not address whether there was an agency relationship between himself and the Director, see Doc. 16, Br. Supp. Def.'s Mot., 8, the Court assumes that such a relationship exists and imputes the agent's actions to Defendant Cooper. Moreover, Defendant Cooper states that he was the Chief Executive Officer of Defendant Verimatrix during the transaction in question. Doc. 17, App. Supp. Def.'s Mot., ¶ 2. Although he states that he "has never conducted any business on behalf of Verimatrix in Texas," he does not contend that he lacked authority, as Defendant Verimatrix's Chief Executive Officer, to complete the transaction. Thus, the Court also assumes that a principal–agency relationship existed between Defendants Cooper and Verimatrix at the time of the alleged transaction. Accordingly, the Court attributes the actions of Defendant Cooper's agent to Defendant Verimatrix.

directors—to hand-deliver the stock certificates to Plaintiffs. Doc. 9, Pls.' First Am. Compl., ¶ 8. Though the agent's physical presence in Texas is relevant to the personal jurisdiction inquiry, see *Walden*, 571 U.S. at 285, the Court does not find it dispositive here.

First, the agent's delivery does not evidence the Defendants' purpose of "establishing a long-term association with [a] resident . . . with the foreseeable and intended result of causing economic activity within the forum state." *See Cent. Freight*, 322 F.3d at 383. Unlike the defendant in *Central Freight*, who sought to establish a "long-standing contractual relationship" and entered an agreement to affiliate itself with an entity in the forum state, Defendants here made no such commitment. *Id.* Like the transaction in *Stuart*, the execution of the stock sale "did not contemplate a long-term relationship with . . . continuing obligations and wide-reaching contacts . . . ." 772 F.2d at 1194.

Second, the agent's delivery of the stock certificate is no more than a fortuity: Plaintiffs have offered no evidence that delivery in Texas had any significance in the alleged contract—apart from Texas being Plaintiffs' place of residence. *See* Doc. 9, Pls.' First Am. Compl., ¶ 8. Presumably, had Plaintiffs resided in a different state, Defendant Cooper's agent would have delivered the stock certificates there—not to Texas. Just as physical visits to the forum state were insufficient to create personal jurisdiction over the defendants in *Renoir* and *Moncrief Oil*, so too is the physical visit here insufficient. *See* 230 F. App'x at 360; 481 F.3d at 313.

Plaintiffs also suggest that Defendant Cooper "solicited Texas residents"—namely Plaintiffs—in Texas. Doc. 9, Pls.' First Am. Compl., ¶ 8; Doc. 27, Pls.' Combined Resp., 4. But Defendant Cooper's affidavit states that he "do[es] not recall ever meeting with Plaintiffs in Texas," and "[t]he only meeting [he] recall[s] having with Plaintiffs occurred in South Korea." Doc. 17, App. Supp. Def.'s Mot., ¶¶ 10–11. And neither of Plaintiffs' affidavits state the location of Defendant

Cooper's alleged solicitation of Plaintiffs. *See* Doc. 28, App. Supp. Pls.' Combined Resp., Exs. 1–2. In fact, neither affidavit mentions any form of solicitation. *See id.* Accordingly, the Court does not assume that Plaintiffs' solicitation allegation is true. *See Lahman*, 2018 WL 3035916, at *4. Rather, the Court credits Defendant Cooper's affidavit testimony and finds that Plaintiffs have not presented "sufficient facts as to make out . . . a prima facie case supporting [personal] jurisdiction" over Defendants Cooper and Verimatrix. *Alpine View*, 205 F.3d at 215.

2.      Defendant Inside Secure

Next, the Court turns to specific jurisdiction with respect to Defendant Inside Secure. Plaintiffs contend that, because "Verimatrix is allegedly a subsidiary of Inside Secure," personal jurisdiction over Defendant Verimatrix may be imputed to Defendant Inside Secure. Doc. 27, Pls.' Combined Resp., 7. Defendant Cooper, however, states that "[t]he rule is actually the opposite: '[P]ersonal jurisdiction is not ordinarily established over one company based on its relationship to a subsidiary or parent.'" Doc. 29, Reply Supp. Def.'s Mot., 7 (quoting *Lahman v. Cape Fox Corp.*, 2019 WL 1150628, at *6 (E.D. Tex. Mar. 13, 2019)).

But given that the Court has found Defendant Verimatrix's alleged contacts insufficient to confer specific jurisdiction, and Plaintiffs have not alleged any independent contacts by Defendant Inside Secure, the Court need not consider whether Defendant Verimatrix's contacts are attributable to Defendant Inside Secure. *See Moncrief Oil*, 481 F.3d at 314. Since the Court lacks specific jurisdiction over Defendant Verimatrix, it has no factual basis for specific jurisdiction over Defendant Inside Secure. Thus, the Court finds that it does not have specific jurisdiction over Defendant Inside Secure.

*B.* *Dismissal or Transfer*

Having concluded that it lacks personal jurisdiction over all Defendants, the Court now considers whether to dismiss or transfer this case. "Where a court finds that it lacks personal jurisdiction, it may dismiss the action pursuant to Federal Rule of Civil Procedure 12(b)(2)." *Herman v. Cataphora, Inc.*, 730 F.3d 460, 466 (5th Cir. 2013). Conversely, the Court can also transfer the action under 28 U.S.C. § 1406(a) "to 'any district or division in which it could have been brought' if the court finds that it is 'in the interest of justice' to transfer the action." *Herman*, 730 F.3d at 466 (quoting *Dubin v. United States*, 380 F.2d 813, 816 (5th Cir. 1967)). Courts—including this one—generally prefer transfer to dismissal. *Scott v. U.S. Army*, 2008 WL 3914835, at *1 (W.D. Tex. June 30, 2008) (quoting 14D CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 3827 (2008)); *see Wolf Network, LLC v. AML Diagnostics, Inc.*, 2016 WL 1357742, at *3 (N.D. Tex. Apr. 5, 2016).

"Under § 1406(a), a court can order transfer regardless of whether it has personal jurisdiction over the defendants." *Autoflex Leasing-Dallas I, LLC v. Autoflex LLC*, 2017 WL 713667, at *5 (N.D. Tex. Feb. 23, 2017). "The statute specifically refers to 'laying venue in the wrong division or district,' but a transfer can be made due to the absence of personal jurisdiction in a district where venue is otherwise proper." *Herman*, 730 F.3d at 466 (quoting *Bentz v. Recile*, 778 F.2d 1026, 1028 (5th Cir. 1985)). The decision to transfer is discretionary, and "often made to prevent waste of time, energy, and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." *Autoflex Leasing-Dallas*, 2017 WL 713667, at *6.

With those factors in mind, the Court concludes that this case should be transferred to a

proper venue rather than face dismissal.[6] Defendant Cooper argues that venue is proper under 28 U.S.C. § 1391(b)(1) in the Southern District of California because "[a]ll Defendants reside or operate in California and two are located in the Southern District of California." Doc. 16, Br. Supp. Def.'s Mot., 17. Specifically, Defendants Cooper and Verimatrix are located in San Diego County, California, within the Southern District of California. *See* Doc. 9, Pls.' First Am. Compl., ¶¶ 3–4. Further, Defendant Inside Secure maintains two offices in California. Doc. 17, App. Supp. Def.'s Mot., ¶ 4. Based on these facts, Defendant Cooper contends that venue is proper in the Southern District of California. Doc. 16, Br. Supp. Def.'s Mot., 17.

Additionally, Defendant Cooper points out that many of the potential witnesses—including Defendants—are likely to be in California. *Id.* at 17–18. Moreover, Defendant Cooper suggests that because all Defendants "have a presence in California, there is a local interest in having those localized interests decided at home." *Id.* at 18.

Plaintiffs, on the other hand, argue that transfer of the case to the Southern District of California "is not appropriate" because Plaintiffs "are witnesses to the transaction and reside in Texas." Doc. 27, Pls.' Combined Resp., 8. Plaintiffs further contend that the "brunt of the injury" was felt in Dallas County, Texas. *Id.* at 8–9. Accordingly, Plaintiffs argue, Dallas County has a local interest in having the case decided in Texas. *Id.* at 9.

The Court agrees with Defendant Cooper that the Southern District of California is a proper venue. Under 28 U.S.C. § 1391(b)(1), venue is proper "in a judicial district in which any defendant

---

[6] Since the Court has found that it lacks personal jurisdiction over all Defendants, it applies 28 U.S.C. § 1406(a), rather than § 1404(a). To the extent that the parties' arguments regarding a § 1404(a) transfer apply to the Court's analysis under § 1406(a), the Court considers them below.

resides, if all defendants are residents of the State in which the district is located . . . ." And for purposes of venue, "a natural person . . . shall be deemed to reside in the judicial district in which that person is domiciled . . . ." 28 U.S.C. § 1391(c)(1). Further, "an entity with the capacity to sue and be sued in its common name . . . shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction . . . ." 28 U.S.C. § 1391(c)(2). Finally, "a defendant not resident in the United States may be sued in any judicial district, and the joinder of such a defendant shall be disregarded in determining where the action may be brought with respect to other defendants." 28 U.S.C. § 1391(c)(3).

First, Defendant Cooper is a citizen and resident of California, and he may be served in San Diego County, California. Doc. 1, Notice of Removal, ¶ 7; Doc. 9, Pls.' First Am. Compl., ¶ 3.[7] And San Diego County is located within the Southern District of California. Doc. 16, Br. Supp. Def.'s Mot., 17. Thus, as a natural person, Defendant Cooper resides in the Southern District of California for venue purposes. *See* 28 U.S.C. § 1391(c)(1).

Second, Defendant Verimatrix is a Californian corporation. Doc. 9, Pls.' First Am. Compl., ¶ 4. Accordingly, it is subject to general personal jurisdiction in California—its state of incorporation. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). And because Defendant Verimatrix is subject to personal jurisdiction in California, it is a resident of the state in which the Southern District of California is located. *See* § 1391(c)(2).

Third, Defendant Inside Secure is "a French business entity" with offices outside of the

---

[7] Plaintiffs state that Defendant Cooper "may be served with process at 10605 Queen Avenue T. La Mesa, California 91941, in San Diego County, Texas." Doc. 9, Pls.' First Am. Compl., ¶ 3. Since this address refers to the state of California, a Californian zip code, and a Californian county, the Court presumes that Plaintiffs erred, intending instead, "San Diego County, California."

United States and in California. Doc. 9, Pls.' First Am. Compl., ¶ 5; Doc. 17, App. Supp. Def.'s Mot., ¶ 4.[8] As an entity with the capacity to be sued, Defendant Inside Secure resides, for venue purposes, in any judicial district where it is subject to personal jurisdiction. *See* § 1391(c)(2). Given that this Court has already found that it lacks specific personal jurisdiction over Defendant Inside Secure in Texas, the pleadings suggest a possible finding of personal jurisdiction over Defendant Inside Secure in only one other forum state: California. But the Court need not determine whether there is personal jurisdiction over Defendant Inside Secure in California, because even if there is not, "a defendant not resident in the United States may be sued in any judicial district . . . ." § 1391(c)(3). Thus, either Californian district courts have personal jurisdiction over Defendant Inside Secure based on its contacts with California, or Defendant Inside Secure is not a resident in the United States and can be sued in any judicial district. Either way, venue would be proper in the Southern District of California under § 1391(b)(1). Accordingly, the Court finds this case "could have been brought" in the Southern District of California. *See* § 1406(a).

Further, transfer to the Southern District of California is in the "interest of justice." *Id.* Because this Court has already determined that it lacks personal jurisdiction over Defendants, Plaintiffs' arguments that the suit should remain in Texas are irrelevant. Further, the Court notes that crucial witnesses—all three Defendants—have a presence in California. Additionally, a transfer prevents the inconvenience and waste of resources that would result should the Court dismiss,

---

[8] This is the extent of both parties' characterization of Defendant Inside Secure's contacts. Further, Plaintiffs fail to dispute Defendant Cooper's testimony that Inside Secure has offices in California and outside of the United States. *See* Doc. 27, Pls.' Combined Resp. Accordingly, the Court may credit this testimony by Defendant Cooper for purposes of considering personal jurisdiction. *See Lahman*, 2018 WL 3035916, at *4 (internal citations and quotation marks omitted) (stating that "genuine, material *conflicts* between the facts . . . are resolved in favor of [the] plaintiff") (emphasis added).

prompting Plaintiffs to refile their case in California. Thus, transfer to the Southern District of California would avoid unnecessary inconvenience to the parties, as well as the waste of time, energy, and money that would accompany this case anew. The Court therefore transfers this case to the Southern District of California.

## V.

## CONCLUSION

For the reasons stated, the Court **DENIES IN PART** Defendant Cooper's motion to dismiss (Doc. 15) for lack of personal jurisdiction. Further, the Court **GRANTS** Defendant Cooper's motion to transfer venue (Doc. 15) pursuant to 28 U.S.C. § 1406(a). Accordingly, the Court hereby **TRANSFERS** this case to the Southern District of California, San Diego Division. Finally, because the Court exercises its discretion to transfer the case based on a lack of personal jurisdiction, the Court does not rule on the remaining arguments in Defendant Cooper's motion to dismiss (Doc. 15) or Defendant Verimatrix's Motion to Dismiss (Doc. 18).

SO ORDERED.

SIGNED: October 25, 2019.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE